[Civ. No. 24251. First Dist., Div. Four. Oct. 2, 1968.]

MAURICE FLETCHER et al., Plaintiffs and Respondents, v.
A. J. INDUSTRIES, INC., Defendant and Appellant;
C. J. VER HALEN, JR., et al., Defendants and Re-
spondents.

314

315

O'Melveny & Myers, Rodney K. Potter, Swerdlow, Glikborg & Shimmer and William D. Moore for Defendant and Appellant.

Walker, Wright, Tyler & Ward, Don F. Tyler and Irving M. Walker for Plaintiffs and Respondents.

Gibson, Dunn & Crutcher, Sherman S. Welpton, Jr., G. Edward Fitzgerald, Kenneth E. Ristau, Jr., Irsfeld, Irsfeld & Younger and John H. Brink for Defendants and Respondents.

RATTIGAN, J.— This appeal is from certain orders en-

tered in a stockholders' derivative action against appellant A. J. Industries, Inc. (hereinafter called the "corporation," or ":AJ"). The questions presented are whether, under the circumstances of the present case, the corporation should be required to pay attorneys' fees and costs incurred in the action (1) by the stockholders who brought it as plaintiffs, or (2) by two officer-directors of the corporation who were named as defendants and whose alleged misconduct was the basis of the action.

Respondents Maurice Fletcher and Bradley, both stockholders of the corporation (and hereinafter "plaintiffs"), commenced the derivative action in December, 1964. The named defendants included the corporation; respondents Ver Halen and Malone; Messrs. Wendell Fletcher and E. J. Sargent; and the personal representative of George T. Fox, deceased. Ver Halen was president of the corporation, Malone was its treasurer. Both men, and Sargent, were members of its board of directors. Wendell Fletcher and Fox had been board members before the action was commenced.

The complaint alleged generally that at relevant times Ver Halen had dominated and controlled the board and the management of the corporation; that he had dominated and acted in concert with Wendell Fletcher, Sargent, Fox and Malone in several transactions which had occurred while all were members of the board;[1] and that, in consequence, the corporation had been damaged in the various transactions, which were then detailed in seven causes of action in the complaint. In an eighth cause of action, plaintiffs alleged that Ver Halen had breached his contract of employment with the corporation. The complaint prayed for several forms of relief on behalf of the corporation, including a money judgment against Ver Halen for $134,150 and one against all the individual defendants in the amount of $1,000,000.

Ver Halen appeared in plaintiffs' action and noticed a motion for security for his litigation expenses, pursuant to subdivision (b) of section 834 of the Corporations Code. The corporation subsequently made a general appearance and joined in Ver Halen's motion.

During the course of a protracted hearing on the joint motion, a settlement of the action was negotiated. Plaintiffs, the corporation, Ver Halen and Malone (the last-named

[1]At the times complained of, the five men named were members of a seven-man board. The other two directors were Messrs. Brandlin and Hill. By stockholder action later, in 1964 but before the action was commenced, the number of directors was increased to nine.

appearing for the first time) filed a formal stipulation executed by their respective attorneys. The stipulation provided that its purpose was to settle all claims set forth in plaintiffs' complaint; that upon performance of the stipulation's "executory provision," the action was to be dismissed with prejudice; and that, pending dismissal, the trial court was to make an order approving the stipulation, the action was not to be prosecuted further, and the trial court was to retain jurisdiction for the purpose of enforcing its order of approval.

The "executory provisions" of the stipulation included these agreements: Four incumbent directors were to be replaced by persons acceptable to plaintiffs, to Ver Halen, and to the corporation; failing their agreement, the new directors were to be appointed by the trial court. The corporation agreed to employ a new officer who would be in charge of its "operations," and who would be one of the four new directors. In the election of future directors, Ver Halen's voting powers as a stockholder were to be limited so as to permit him to elect only two of the board's nine members. His employment contract was to be amended to provide that he could be employed as president of the corporation or, at the board's option, as chairman of the board. Malone was to be one of the directors replaced, and he was to resign as the corporation's treasurer.

Several of the specific charges alleged in plaintiffs' complaint related to claimed mismanagement of the corporation due to Ver Halen's "domination" of its affairs; to Malone's allegedly excessive salary; and to Ver Halen's asserted breach of his employment contract. The stipulated agrements summarized above apparently disposed of these matters.

Most of the other charges made in the complaint related to specific transactions in which plaintiffs asserted misconduct on the part of Ver Halen. In other "executory provisions" of the stipulation it was agreed that these would be referred to arbitration, to be conducted in a subsequent proceeding. The question to be arbitrated, in each instance, was "whether or not" the alleged misconduct had occurred. The parties to the stipulation agreed to be bound by the arbitrator's decision as to each transaction, and the stipulation clearly contemplated the prospect that the corporation could receive a monetary award when the arbitration proceeding had been concluded.

Whether the corporation was entitled to monetary recovery in any respect was, thus, to be determined in the future. In contrast, the stipulated agreements—providing for the reor-

ganization of the corporation's board of directors and its management, the ouster of Malone, and the amendment of Ver Halen's contract of employment — were to be peformed immediately.

The stipulation further provided that the arbitrator could award attorneys' fees, to be paid by the corporation, to any counsel who appeared in the arbitration proceeding, except that plaintiffs' attorneys could be awarded fees only in the event the corporation received a monetary award. The parties acknowledged (1) that plaintiffs' and the individual defendants' attorneys intended to apply to the trial court—as distinguished from the future arbitrator—for fees and costs to be paid to them by the corporation "in connection with this action," but (2) that the corporation could take "any position in connection with such applications that it may choose."

The trial court entered an order which referred to the stipulation, approved it, and ordered the parties to perform its executory provisions.

In the order the court made this finding:

"The Court finds that, in view of the terms, conditions and provisions of said written stipulation, the best interests of the corporation and of all of its shareholders have been, are, and will be, fully protected; that the necessity for prolonged and expensive litigation will be avoided and; further, that the arbitration proceedings provided for in said written stipulation will be less time consuming and less expensive but will, nevertheless, insure to the corporation and to its shareholders the benefit of any financial recovery to which it or they may be entitled, if any."

Plaintiffs noticed and filed their application for an order requiring the corporation to pay their attorneys' fees and costs incurred in the action. Ver Halen and Malone separately noticed application for indemnity, to be assessed against the corporation, for their fees and costs incurred as defendants. After hearings—at which the corporation opposed all three applications, as it was free to do under the stipulation—the trial court entered orders granting each. We now consider these orders in each of their two separate categories.

### The Order Awarding Attorneys' Fees and Costs to Plaintiffs

In its order granting plaintiffs' application for attorneys fees and costs, the trial court found that they had employed their attorneys to prosecute the derivative action, in good

faith, on behalf of themselves and the other stockholders of the corporation, and that the corporation was able to pay the fees and costs incurred. The court also found that by reason of the action, and its settlement, "substantial benefits have been conferred" upon the corporation.[2] Based upon these findings, the court ordered the corporation to pay plaintiffs' attorneys' fees ($64,784) and costs ($2,179.26).

The validity of the foregoing order is the issue first presented on the corporation's appeal. ▇ Under the general rule in California and in most American jurisdictions, the party prevailing in an action may not recover attorneys' fees unless a statute expressly permits such recovery. The California expression of the general rule, itself statutory, is found in Code of Civil Procedure section 1021.[3]

[2]". . . in the following particulars, to wit:

"a) That by reason of the settlement of said action, and without regard to whether plaintiffs or defendants would have been successful in the ultimate outcome thereof, the defendant A. J. Industries, Inc., a corporation, has been saved substantial expenditures for attorneys' fees, costs, and the loss of valuable time of valued employees by reason of the fact that the settlement and compromise obviates the necessity of a trial of this cause on its merits.

"Probable expenditures by the corporation, aforesaid, have been estimated by witnesses offered by defendants to be in excess of the sum of $200,000.00.

"b) That by reason of said settlement the rights of the defendant corporation, if any, to recover from the defendant C. J. Ver Halen monies alleged to be due said corporation by such defendant has been fully protected and reserved in that a fair and equitable arbitration proceeding is provided for as a part of the terms of said settlement. Said arbitration to be conducted by a completely impartial arbitrator under rules fair and equitable to all parties in said arbitration.

"c) That while the court expressly makes no findings that the defendants C. J. Ver Halen, Jr. has by his conduct dominated and controlled the majority of the board of directors of said corporation and the management and administration of said corporation, it is true that charges to that effect are a part of plaintiffs' complaint and by reason of the settlement adequate and comprehensive restrictions are provided so as to prevent and guard against any such domination and control in the future affairs of said corporation.

"d) That the court expressly makes no finding with respect to whether or not numbers of the board of directors, as of the time of filing of the complaint, were under the domination and control of defendant Ver Halen, or were or were not acting independently; however the settlement and compromise of this action provides adequate means for the selection and election of qualified and independent directors in the future and avoids the selection of the whole of the corporation's board of directors, by the exercise of voting of the majority of stock by an individual or individuals holding a majority of the shareholders' proxies."

[3]In relevant part, section 1021 states that "Except as . . . specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; . . ."

■ An exception to the general rule is found, however, in the so-called common-fund doctrine, which is applicable in equity cases and recognized as such in California. As the Supreme Court has stated, "It is a well-established doctrine of equity jurisprudence that where a common fund exists to which a number of persons are entitled and in their interest successful litigation is maintained for its preservation and protection, an allowance of counsel fees may properly be made from such fund. By this means *all* of the beneficiaries of the fund pay their share of the expense necessary to make it available to them. [Citations.]" (Italics from the quoted text.) (*Winslow* v. *Harold G. Ferguson Corp.* (1944) 25 Cal. 2d 274, 277 [153 P.2d 714]. See *id.*, at p. 285; *Estate of Stauffer* (1959) 53 Cal.2d 124, 132 [346 P.2d 748]; *Estate of Reade* (1948) 31 Cal.2d 669, 671-672 [191 P.2d 745]; 3 Witkin, Cal. Procedure (1954) Judgment, § 35, p. 1917.)

■ The common-fund doctrine has been held to apply in favor of a plaintiff who has successfully maintained a stockholder's derivative action on behalf of a corporation in this state. (*Fox* v. *Hale & Norcross Silver Min. Co.* (1895) 108 Cal. 475, 477 [41 P. 328]. See *Grady* v. *Pacific Mut. Life Ins. Co.* (1964) 61 Cal.2d 673, 676-679 [39 Cal.Rptr. 914, 394 P.2d 730]; 3 Witkin, Cal. Procedure, *supra*, at pp. 1917-1918; 3 Witkin, Summary of Cal. Law (7th ed. 1960) § 98, par. (g), pp. 2389-2390; Comment (1942) 30 Cal.L.Rev. 667, 668.)

■ Under the "substantial benefit" rule, a variant of the common-fund doctrine as applied more recently in other jurisdictions, the successful plaintiff in a stockholder's derivative action may be awarded attorneys' fees against the corporation if the latter received "substantial benefits" from the litigation, although the benefits were not "pecuniary" and the action had not produced a fund from which they might be paid. (*Bosch* v. *Meeker Coop. Light & Power Assn.* (1960) 257 Minn. 362 [101 N.W.2d 423, 426]. See *Schechtman* v. *Wolfson* (2d Cir. 1957) 244 F.2d 537, 540; Annotation, 39 A.L.R.2d 580, 583-590; *id.*, Later Case Service, pp. 603-606; Note (1960) 48 Cal.L.Rev. 843; Hornstein, *Legal Therapeutics: The "Salvage" Factor in Counsel Fee Awards* (1956) 69 Harv.L.Rev. 658, 675 et seq., Hornstein, *New Aspects of Stockholders' Derivative Suits* (1947) 47 Colum.L.Rev. 1, 24 et seq. For a comparison between the substantial-benefit rule and the common-fund doctrine, see 19 Am.Jur.2d, Corporations, §§ 588-589, pp. 111-114.)

In the present case, some of the causes of action alleged in

plaintiffs' complaint might have produced a "common fund" in the form of a money judgment against appellant corporation. None, however, did: they were referred to an arbitration proceeding which was to be conducted in the future. For the obvious reason that no fund existed, the trial court applied the substantial-benefit rule[4] in entering the order in question, under which the award of attorneys' fees is charged directly against the corporation. The latter, appealing from the order, contends that the award could not be made unless the action produced a fund, because the substantial-benefit rule does not apply in California. The issue apparently presents a matter of first impression in this state.

The California decisions are substantially uniform to the effect[5] that a plaintiff who has successfully maintained a representative action is entitled to an award of attorneys' fees from a common fund. (In derivative actions by corporate shareholders, see *Grady* v. *Pacific Mut. Life Ins. Co., supra*, 61 Cal.2d 673 at pp. 676-679; *Adams* v. *California Mut. Bldg. & Loan Assn.* (1941) 18 Cal.2d 487, 489 [116 P.2d 75]; *In re Pacific Coast Bldg.-Loan Assn.* (1940) 15 Cal.2d 155, 157-160 [99 P.2d 261]; *County of Tulare* v. *City of Dinuba* (1928) 205 Cal. 111, 118-119, 127 [270 P. 201]; *Fox* v. *Hale & Norcross Silver Min. Co., supra*, 108 Cal. 475, 477; *Pratt* v. *Robert S. Odell & Co.* (1944) 63 Cal.App.2d 78, 85-87 [146 P.2d 504]; *Mann* v. *Superior Court* (1942) 53 Cal.App.2d 272, 282-283 [127 P.2d 970]; 3 Witkin, Summary of Cal. Law (7th ed. 1960) Corporations, § 98, pp. 2389-2390; 3 Witkin, Cal. Procedure, *supra*, at pp. 1917-1918; Comment, *supra*, 30 Cal.L. Rev. 667 at p. 668. In other representative actions, see *Estate of Stauffer, supra*, 53 Cal.2d 124 at p. 132; *Estate of Reade, supra*, 31 Cal.2d 669 at pp. 671-672; *Winslow* v. *Harold G. Ferguson Corp.*, quoted *supra*, 25 Cal.2d 274 at p. 277; *id.*, at p. 285; *Estate of Marre* (1941) 18 Cal.2d 184, 192 [114 P.2d 586]; *Farmers etc. Nat. Bank* v. *Peterson* (1936) 5 Cal.2d 601, 607 [55 P.2d 867].)

Appellant corporation cites some of the foregoing authorities in support of its assertion that a successful plaintiff cannot be awarded attorneys' fees *unless* an identifiable common

[4]The court said as much in a memorandum decision on the subject, citing *Bosch* v. *Meeker Coop. Light & Power Assn., supra*, 101 N.W.2d 423.

[5]Many statements to this effect in the cases are dicta, and in many cases the proposition stated here has been recognized but not applied. (See 3 Witkin, Cal. Procedure, *supra*, p. 1917.)

fund has been recovered or protected in the representative action. None of them, however, so holds or states; none goes further than to indicate that the award *may* be made payable from a fund *if* one exists in fact.

In one derivative-suit decision the Supreme Court stated that ". . . the law . . . does provide, apart from statute, for charging *against the corporation* the costs and counsel fees of a plaintiff who has successfully maintained a representative action. [Citations.] Since counsel fees for maintaining the action in such a situation *are measured* in a material part by the *benefits recovered* on behalf of the corporation, and both costs and counsel fees *are charged against the corporation* and *may* be made payable out of or a lien against the fund recovered, there is little likelihood that a plaintiff might successfully maintain the action and yet be unable to collect an award for his expenses.'' (Italics added.) (*Beyerbach* v. *Juno Oil Co.* (1954) 42 Cal.2d 11, 19-20 [265 P.2d 1].)

█ The *Beyerbach* language imports, and we conclude, that under the California rule (1) an award of attorneys' fees to a successful plaintiff may properly be measured by, and paid from, a common fund where his derivative action on behalf of a corporation has recovered or protected a fund in fact: but (2) the existence of a fund is not a prerequisite of the award itself.

This conclusion is not dispelled by other decisions, relied upon by appellant corporation, in which successful plaintiffs were denied attorneys' fees. (*Bank of America* v. *West End etc. Co.* (1940) 37 Cal.App.2d 685 [100 P.2d 318]; *Pacific Gas & Elec. Co.* v. *Nakano* (1939) 12 Cal.2d 711 [87 P.2d 700, 121 A.L.R. 417]; *Los Angeles Trust etc. Bank* v. *Ward* (1925) 197 Cal. 103 [239 P. 847].) In the *Mann* case the action was essentially by one class of corporate stockholders against another. The *Pacific Gas & Elec.* and *Los Angeles Bank* cases each involved a stakeholder action against conflicting claimants, as presently contemplated in Code of Civil Procedure section 386.6. Thus, none of these cases is relevant here because none involved a representative action. (See 3 Witkin, Summary of Cal. Law, *supra,* at p. 2390.)

Our conclusion, moreover, is supported by the history of the common-fund doctrine itself. The doctrine—permitting attorneys' fee awards to a successful plaintiff in a representative action, but from a common fund—originated with the United States Supreme Court in *Trustees of Internal Improv. Fund* v. *Greenough* (1881) 105 U.S. 527, 532, 537 [26 L.Ed 1157,

1160, 1162]. (See Hornstein, *op. cit. supra,* 39 Colum.L.Rev. 785 at pp. 787-788; Hornstein, *op. cit. supra,* 69 Harv.L.Rev. 658.)

The same court later held that the *Greenough* rule would apply in favor of a successful plaintiff although a common fund as such had *not* materialized in the action. (*Sprague* v. *Ticonic Nat. Bank* (1939) 307 U.S. 161, 166-167 [83 L.Ed. 1184, 1186-1187, 59 S.Ct. 777].) This was so, the *Sprague* court reasoned, because the trial court's power to award attorneys' fees derived, not from the fact that a fund had been created, but from the broad "power of equity in doing justice as between a party and the beneficiaries of his litigation." (*Id.,* at p. 167 [83 L.Ed. at p. 1187].) The *Sprague* holding has been recognized as a significant extension of the *Greenough* rule. (Hornstein, *op. cit. supra,* 69 Harv.L.Rev. 658 at p. 659. Note, *supra,* 48 Cal.L.Rev. 843 at p. 846.)

The California courts have consistently recognized *Greenough* as the source of the basic rule in question. (See, e.g., *Winslow* v. *Harold G. Ferguson Corp., supra,* 25 Cal.2d 274 at p. 277; *In re Pacific Coast Bldg.-Loan Assn., supra,* 15 Cal.2d 155 at pp. 157-158; *County of Tulare* v. *City of Dinuba, supra,* 205 Cal. 111 at p. 127; *Fox* v. *Hale & Norcross Silver Min. Co., supra,* 108 Cal. 475 at pp. 476, 477; *Mann* v. *Superior Court, supra,* 53 Cal.App.2d 272 at p. 282].)

 It therefore appears that the *Sprague* extension should be recognized in California, and that the substantial-benefit rule may be applied, to permit an attorneys' fee award in the absence of a common fund.

It bears emphasis that the substantial-benefit rule is an *extension* of the common-fund doctrine, because as such it attains the doctrine's recognized status as an exception to the language of Code of Civil Procedure section 1021 (quoted in footnote 3, *ante.*) Language suggesting to the contrary appears in *Solorza* v. *Park Water Co.* (1949) 94 Cal.App.2d 818 [211 P.2d 891]. In that case, which involved a stockholder's derivative action, the court stated (*id.,* p. 822) that section 1021 operated to disallow an attorneys' fee award to the plaintiff because ". . . [The common-fund doctrine] . . . [is] . . . the *only possible basis* for an award of attorney's fees in a suit of this nature." (Italics added.)

In *Solorza,* however, the claimed award had not been earned: the derivative action was entirely unsuccessful. (*Id.,* at pp. 821, 822.) For that reason, no "benefit"—pecuniary or otherwise—had been realized by the corporation; the ques-

tion of "substantial" benefit did not arise; and, in that context, the *Solorza* court's reference to the common-fund doctrine as the "only possible basis" for an attorneys' fee award was dictum. *Solorza,* morover, turned upon an intricate procedural sequence which tends to limit its holding to its unique facts. We do not, in any event, read it to preclude the application of the substantial-benefit rule in this state.

And in our view the rule should be applied in a proper case. The more limited common-fund doctrine is followed in fairness to the successful plaintiff, to prevent unfair advantage to those who benefit in his success by requiring them to share its cost, and to encourage proper litigation by assuring that the successful attorneys will be adequately compensated. (*Estate of Stauffer, supra,* 53 Cal.2d 124 at p. 132.) Application of the substantial-benefit rule serves the same purposes.

The stockholder's derivative suit, moreover, is an effective means of policing corporate management. The action should not be inhibited by a doctrine which limits the compensation of successful attorneys to cases which produce a monetary recovery; the realization of substantial, if nonpecuniary, benefits by the corporation should be the criterion. (Note, *supra,* 48 Cal.L.Rev. 843 at p. 845.) And, to the extent that the substantial-benefit rule affirmatively encourages stockholders to exercise their right to seek redress for corporate mismanagement, it serves important considerations of public policy. (Note (1960) 13 Stan.L.Rev. 146, 148; Hornstein, *op. cit. supra,* 47 Colum.L.Rev. 784 at p. 791 et seq.) The encouragement of nuisance-value derivative actions ("strike suits") is avoided or minimized by the requirement that only "substantial" benefits will entitle the successful stockholder to attorneys' fees. (See *Bosch* v. *Meeker Coop. Light & Power Assn., supra,* 101 N.W.2d 423 at p. 426 [quoting *Schechtman* v. *Wolfson, supra,* 244 F.2d 537 at p. 540].)

█ The final question in the present case is whether the benefits realized by the corporation were sufficiently "substantial" to warrant the award. To find that they were, the trial court need not determine that abuses existed in the corporate management, and that the action corrected them. It will suffice if the court finds, upon proper evidence, that the results of the action "maintain the health of the corporation and raise the standards of 'fiduciary relationships and of other economic behavior,' " or "*prevent*[s] an abuse which would be prejudicial to the rights and interests of the corporation or affect the enjoyment or protection of an essential

right to the stockholder's interest." (*Bosch* v. *Meeker Coop. Light & Power Assn., supra,* 101 N.W.2d 423 at pp. 426, 427: (italics added.) The trial court was explicit to this effect in its order awarding plaintiffs their attorneys' fees and costs. (See pars. [c] and [d], quoted in footnote 2, *ante.*)

█ It is not significant that the "benefits" found were achieved by settlement of plaintiffs' action rather than by final judgment. The authorities recognizing the substantial-benefit rule have permitted attorneys' fee awards in settled cases. (See, e.g., *Steinberg* v. *Hardy* (1950) 93 F.Supp. 873.) This is in keeping with the law's general policy favoring settlements (*People* ex rel. *Dept. Public Works* v. *Forster* (1962) 58 Cal.2d 257, 263 [23 Cal.Rptr. 582, 373 P.2d 630]) ; and in a stockholder's derivative action the trial court is in a position to scrutinize the fairness of a settlement because the court alone can authorize the action's dismissal. (*Spellacy* v. *Superior Court* (1937) 23 Cal.App.2d 142, 146-148 [72 P.2d 262].)

█ Some of the "benefits" found by the trial court in the present case related to the comparative economy to be realized by proceeding in arbitration rather than in conventional adversary litigation. Other "benefits," though, were realized in the form of immediate changes in the corporate management. The corporation argues that some of these had been under consideration by its board of directors before plaintiffs sued and settled, and that the real value of others is speculative. But the trial court found that the changes were substantial as benefits to the corporation and, in effect, that plaintiffs' action had brought them about. The finding is supported by ample evidence, and it is decisive on the appeal. We therefore affirm the award of attorneys' fees and costs to plaintiffs.

### The Orders Awarding Attorneys' Fees and Costs to the Defendant Officer-Directors

We turn to the corporation's appeal from the orders providing indemnity to respondents Ver Halen and Malone for their attorneys' fees and costs, and assessing charges therefor against the corporation. Since both orders are controlled by the same principles, we first review the Ver Halen order.

The order assessed against the corporation Ver Halen's attorneys' fees and costs in the aggregate amount of $38,415.10. In two of several enumerated findings in it, the trial court found that Ver Halen had reasonably incurred

attorneys' fees ($38,294.50) and costs ($120.60) in defending the action, and that the corporation was able to pay both amounts. These findings are not disputed: three others which are relevant to the appeal (numbers 2, 3 and 5) are set forth in the margin.[6] The findings numbered 2 and 3 were indicated—and supported—by the history of the action: no evidence was received on the issue of Ver Halen's conduct as evaluated in finding no. 5.

 Plaintiffs' application for litigation expenses was not controlled by statute because an exception to the statutory rule expressed in Code of Civil Procedure section 1021 was found in case law. With Ver Halen's application, the opposite occurs: it fell within subdivision (a) of section 830 of the Corporations Code.[7] Section 830 expressly provides that it is the "exclusive" authority for an order assessing a

---

[6] In their context, these findings read as follows:

"It Is Hereby Found and Determined That:

". . . . . . . . . . . . .

"2. Ver Halen was sued in this case because he is and was a director and officer of AJ, and these proceedings arose out of his alleged misfeasance or non-feasance in the performance of his duties or out of alleged wrongful acts against AJ or by AJ.

"3. This action was settled in accordance with a stipulation among the parties hereto which stipulation was approved by this Court in an order entered herein on August 4, 1965. Such settlement was approved by this Court as being for the benefit of and in the best interest of AJ and all of its shareholders in that:

"a. The necessity for prolonged and expensive litigation was avoided;

"b. Substantial disruption of corporate affairs and operations, loss of time and imposition that would have been made upon the employees and officers of AJ, public disclosure of the affairs and operating procedures of the corporation, and publicity potentially adverse to AJ, were avoided;

"c. The arbitration proceedings provided for in such stipulated settlement will be less time consuming and less expensive but will, nevertheless, insure to the corporation and to its shareholders the benefit of any financial recovery to which it or they may be entitled, if any.

". . . . . . . . . . . . .

"5. The conduct of Ver Halen fairly and equitably merits indemnity for reasonable attorneys' fees and costs incurred in his defense of this action."

[7] "(a) When a person is sued, either alone or with others, because he . . . was a director, officer, or employee of a corporation . . . , in any proceeding arising out of his alleged misfeasance or nonfeasance in the performance of his duties or out of any alleged wrongful act against the corporation or by the corporation, indemnity for his reasonable expenses, including attorneys' fees incurred in the defense of the proceeding, may be assessed against the corporation . . . , by the court in the same or a separate proceeding, if both of the following conditions exist:

"(1) The person sued is successful in whole or in part, or the proceeding against him is settled with the approval of the court.

"(2) The court finds that his conduct fairly and equitably merits such indemnity.

". . . . . . . . . . . . .

"(e) The rights and remedy provided by this section are exclusive. The awarding of indemnity for expenses, including attorneys' fees, to

defendant officer-director's litigation expenses against the corporation which employs him (*id.*, subd. [e]; see Ballantine, *California's 1943 Statute as to Directors' Litigation Expenses: An Exclusive Remedy for Indemnification of Directors, Officers and Employees* (1943) 31 Cal.L.Rev. 515, 517), and no decisions qualify its exclusive application. The question, then, is whether section 830 permitted the Ver Halen order at the time of its entry and under the unusual circumstances then existent.

Subdivision (a) of section 830 permits such order upon two conditions. In the present case the first condition was literally met: as the trial court also found, plaintiffs' action was "settled with the approval of the court." According to the express language of the statute, the second condition is met if "[t]he court finds that . . . [the] . . . conduct [of the officer-director applicant] . . . fairly and equitably merits such indemnity." Ver Halen contends that the second condition was met here because the trial court did so find as to him. In our view, a proper construction of section 830 in the present case will not sustain either his argument or the finding itself.

In enacting section 830 the Legislature applied, in favor of corporate personnel, the theory under which a principal is obligated to indemnify the agent for expenses arising from his performance of the agency. (Ballantine, *op. cit. supra*, 31 Cal.L.Rev. 515 at p. 520.) The theory applies and the duty exists, however, only where the agent is not barred from its benefits by the illegality of his own conduct. (Rest. 2d, Agency, § 439.) As the latter qualification is expressed with reference to litigation expenses the principal has a duty to indemnify where the litigation against the agent is "unfounded" (Rest.2d, Agency, *supra*, § 439, subd. (d); *id.*, com. h; Rest.2d, Agency, Appendix, Rep. Notes, pp. 685-686); and the Legislature accordingly intended to limit the statutory indemnity of corporate officer-directors to "expenses springing from the *proper* performance" of their duties. (Ballantine, *op. cit. supra*, at p. 520: italics added.)

It therefore appears that, when a trial court finds— as section 880 requires—that the "conduct" of an officer-director "fairly and equitably merits" indemnity for his attorneys' fees and costs, the court must necessarily have

parties to such proceedings, whether terminated by trial on the merits or by settlement or dismissal, shall be made only upon order of court pursuant to this section, . . ."

made a favorable assessment of his "conduct" as an officer-director, and in the light of the charges made against him in the litigation involved. This is clearly true where the litigation has gone to trial and judgment. (See *New Capital for Small Businesses, Inc.* v. *Saunders* (1963) 215 Cal.App.2d 728, 733 [30 Cal.Rptr. 563].) It may also be true where the officer-director applies for indemnity in connection with a settlement of the action (a possibility clearly contemplated by section 830); and we may acknowledge that in a given case the court's favorable assessment of his "conduct," and the entry of its finding reflecting it, may be agreed upon in the settlement itself.

But the trial court made no assessment of Ver Halen's conduct, favorable or otherwise: and in its order awarding plaintiffs their attorneys' fees and costs, it expressly disclaimed doing so. (See footnote 2, *ante*, particularly pars. [c] and [d].) The disclaimer was obviously made because Ver Halen's conduct remained to be tested in the future arbitration proceeding. The decisive point on the appeal, though, is that no evidence concerning his "conduct" was received when his application for indemnity was heard; the parties stipulated to none, and they did not stipulate to the finding that his conduct "fairly and equitably" merited the indemnity awarded him. Certain presumptions which might ordinarily have been accepted as evidence were in statutory effect when the Ver Halen order was entered (Code Civ. Proc., § 1963, subds. 1, 19), but these could not have operated in Ver Halen's favor while his innocence of wrongdoing (§ 1963, subd. 1) and the fairness and regularity of his transactions (*id.*, subd. 19) were subject to determination in the future arbitration. For lack of any evidence supporting it, the finding concerning his conduct fails and the order must be reversed.

The language of the other order, which awarded Malone $4,500 in attorneys' fees, was substantially similar to that of the Ver Halen order, including—and the Malone order was equally dependent upon—a finding that his "conduct fairly and equitably" merited the indemnity. Malone was not named in the provisions of the parties' stipulation which referred certain matters to arbitration: only Ver Halen was named. However, Malone's conduct—if not his liability to the corporation—was still at issue in the arbitration, because plaintiffs' complaint had alleged that he "acted in concert" with Ver Halen in some of the transactions in question.

Again, no evidence concerning his "conduct" was received when his application for indemnity was heard; no stipulation of the parties reached it; and no presumption applied in his favor. The finding that Malone's conduct "fairly and equitably" merited indemnity fails for lack of supporting evidence, and the Malone order must be reversed.

The "Order Granting Plaintiffs Attorneys' Fees and Costs" entered herein on December 20, 1965, is affirmed. The "Order Granting Defendant C. J. Ver Halen, Jr. Indemnity for Expenses and Attorneys' Fees" and the "Order Granting Joseph J. Malone Indemnity for Expenses and Attorneys' Fees," both entered herein on December 20, 1965, are reversed.

Devine, P. J., concurred.

CHRISTIAN, J.—I dissent in part.

In *Solorza* v. *Park Water Co.* (1949) 94 Cal.App.2d 818 [211 P.2d 891], like the present case a shareholder's derivative action in behalf of a corporation, the Court of Appeal, citing *Winslow* v. *Harold G. Ferguson Corp.* (1944) 25 Cal. 2d 274 [153 P.2d 714] as establishing the "common fund" doctrine in California, declared: "The principles quoted from the Winslow case are the *only* possible basis for an award of attorney's fees in a suit of this nature. Unless specifically provided by statute, or by express or implied agreement of the parties, a party to an action is not entitled to recover attorney's fees." (94 Cal.App.2d at p. 822.) I regard the language just quoted not as dictum but as an alternative ground of decision. Reasonable predictability in appellate decisions is desirable; accordingly, I would follow the *Solorza* decision until it has been nullified by legislation or disapproved by our Supreme Court.

Leaving aside *Solorza*, I dissent on a further ground from the holding that attorneys' fees are allowable despite the fact that here there is no "common fund": allowance of attorneys' fees is in California regulated by statute. That statute (Code Civ. Proc., § 1021) is old; it has been construed many times as establishing a general rule in this state prohibiting the allowance of attorneys' fees in the absence of an agreement between the parties "except as specifically provided for by statute." There is no such statute or agreement applicable to this case.

The majority opinion refers to certain considerations of

policy which appear to indicate that it would be a good thing to allow attorneys' fees against a corporation when one of its shareholders succeeds in a derivative action and substantial benefit to the corporation results. The opinion then declares the existence of such a rule as an extension of the judicially created "common fund" exception to the statutory rule. But countervailing policy arguments are not lacking: for example, if the existence of a "common fund" protected or increased by the stockholders' action is not prerequisite to the allowance of fees the officers and directors may well be faced with a liquidation of assets to pay fees, even though resulting harm to the corporation might be disproportionate to the "substantial benefits" derived from the lawsuit. Considerations of this character can better be appraised in the legislative process than by the episodic reaction of courts to such facts as may happen to be presented to them in isolated litigation. Moreover, it appears likely that the new enlargement of the "common fund" exception to the rule laid down in the statute may greatly outweigh in practical importance the court-created exception on which it is to be grafted. The variety of shareholders' actions in which "substantial benefit" to the corporation may be found is literally boundless. Before such an important change in the law is effected it would be better to conduct hearings open to all interested persons, to commission thorough technical analyses by specialists in the field, or to authorize studies by the Law Revision Commission. All these avenues of enlightenment are open to the Legislature but not to us.

I would reverse the "Order Granting Plaintiffs Attorneys' Fees and Costs." I concur in the reversal of the other orders.

A petition for a rehearing was denied November 1, 1968. Christian, J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied December 11, 1968.