For the reasons stated, the judgment is affirmed.

Doran, J., and White, J., concurred.

[Civ. No. 13537.   Second Dist., Div. Two.   July 7, 1942.]

SAMUEL MANN et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

Hanna & Morton and Lewinson & Armstrong for Petitioners.

Moidel, Moidel & Moidel and Isadore Moidel in pro per. and John W. Preston and Alfred P. Peracca for Respondents.

HANSON, J. pro tem.—In this case we issued a writ of review and stayed the proceedings below in order that we might consider the action of the trial court in granting a new trial to an intervener upon the single question as to whether there should be a reallocation of attorneys' fees between

counsel for the various parties concerned. The principal question for decision is whether the trial court had jurisdiction to entertain the motion for a new trial. A subsidiary question is whether the motion for new trial lies to an order allowing attorney fees, granted as an incident to a recovery in a stockholder's derivative suit and not upon an issue joined by the pleadings. A brief history of what transpired in the suit will be sufficient for its decision here.

In September, 1938, plaintiff Mann, who was the owner of 332 shares of the preferred stock of the defendant Hearst Consolidated Publications, Inc., instituted this stockholder's derivative suit in equity. A detailed and searching demurrer was filed to the first complaint and sustained. Upon the second amended complaint, consisting of 78 pages and filed April 15, 1939, the defendants joined issue by filing answers. Before the instant suit was instituted and before he sought and was granted leave to intervene in this action, intervener Gans, who was the owner of stock in Consolidated and who had been an editorial employee of one of the newspapers owned by it, instituted a stockholder's derivative suit in New York, on or about June 9, 1938. Similar suits in that state by other stockholders, among them one by O'Neill, subsequently an intervener herein, by order of the New York court were not only consolidated with the Gans suit but his counsel was appointed to act for all the parties plaintiff in the consolidated New York litigation. In September, 1939, what we shall designate as the O'Neill group sought and was granted permission to intervene in the instant action by adopting the pleadings of Mann. In the complaint in intervention the O'Neill group alleged they were parties to similar suits in other jurisdictions. On April 18, 1940, Mrs. Mayer, owning six shares of the preferred stock of Consolidated, through her counsel Milton J. Levy, of New York City, and the firm of Moidel, Moidel & Moidel of Los Angeles, sought and was granted permission to intervene as a plaintiff by adopting the pleadings of Mann. Meantime Gans, becoming concerned over a rumor that settlement was pending in the instant case between the parties thereto, sought and on May 13, 1940, was granted permission to intervene as a plaintiff in the case below. However, while Gans adopted the bill of plaintiff Mann, he augmented it by setting forth twelve additional causes of action in his complaint of intervention. Subsequently counsel for Gans represented the O'Neill group of in-

terveners as well as Gans in the trial below. One Mrs. Heaney, a shareholder of Consolidated, it appears, was represented at the trial by her counsel, Penprase, but so far as we have discovered from the record she did not formally intervene in the case.

In the early stages of the trial, which began on May 14, 1940, the court below properly ruled that the case in behalf of plaintiff Mann and the various interveners should be presented and conducted by counsel for Mann. At the conclusion of the trial, which continued intermittently but rather constantly over a period of more than a year, and during which testimony was taken in open court totaling 5,851 pages of transcript and 11,482 pages by deposition, the cause was submitted for decision on July 15, 1941. On October 23, 1941, the trial court announced its decision in writing, finding against certain of the named defendants and for others, and directed that formal findings be prepared in accordance with its decision.

As none of the pleadings had made any claim for attorneys' fees out of any fund that might be recovered, except for the prayer in plaintiff Mann's second amended complaint, plaintiff Mann, intervener Mayer and intervener Gans (joined by the O'Neill group) each separately filed on October 27, 1941, a motion for an allowance of attorneys' fees. Thereafter, on October 30, 1941, the respective motions were presented and heard in open court by the trial judge in the case, and pursuant to the request of all the counsel involved the motions were thereupon submitted for determination as to the amount to be allocated to counsel for each of the moving parties. No requests were made by any of the counsel for the respective parties for permission to introduce evidence as to the value, detail or extent of the legal services rendered, but instead the motions as submitted were based upon the files, minutes and records of the case, except for such affidavits as were attached to the respective motions or by order of the court permitted to be attached not later than the following day. On November 5, 1941, the trial judge announced in open court, at a hearing attended by the parties, that notwithstanding that the amount of the judgment to be rendered against the defendants found liable had not then been definitely calculated by him, he proposed to allow, as the aggregate for all the attorneys' fees, an amount equivalent to 20 per cent on the first two million dollars recovered, 15 per cent on the second two million dollars and 10 per cent on any excess over four million

dollars. He further stated that out of said aggregate sum he would order, after a payment of $1,000 to attorney Penprase, that a sum equivalent to 2 per cent of the remainder should be paid to counsel for Mayer, 30 per cent to counsel for the Gans and O'Neill group and the remaining 68 per cent to counsel for plaintiff Mann. The amount for which judgment should be entered against the defendants found liable therefor having been calculated on November 10, 1941, the trial judge on that day signed and filed his formal findings and conclusions of law.

In these findings, and consistent with his oral announcement, the trial judge found that by reason of the efforts of counsel for plaintiff and interveners an award of reasonable attorneys' fees should be made to them; that the total should be a percentage of the principal amount of the judgment, and that the amount thus arrived at should be apportioned to the counsel for the several groups of parties as indicated above. In the general judgment entered upon the findings and conclusions (filed on the same day as the latter) the court rendered separate, distinct and several judgments in favor of the various counsel groups. As a result, Milton J. Levy and Moidel, Moidel & Moidel, counsel for intervener Mrs. Mayer, were awarded judgment for 2 per cent of the total allotted to all counsel other than Penprase. The judgment also recited as follows: "It is further adjudged and decreed, that defendant Hearst Consolidated Publications, Inc., has in writing waived its right of appeal, as well as any right to move for a new trial, from each respective portion hereof awarding attorneys' fees on condition that the party entitled thereto does not move for a new trial or appeal from the provisions hereof awarding attorneys' fees to such party and the manner of payment of such fees as herein set forth. The right of any party to appeal or move for a new trial on any other issue is not affected hereby."

On November 12, 1941, the trial judge who heard the case from its inception to its conclusion resigned to accept an appointment as justice of another division of this court. Thereafter, on the morning of November 18, 1941, intervener Mrs. Mayer filed a motion for new trial, and in the afternoon she, along with her counsel, joined all the other parties (including Consolidated) and their counsel in executing and filing a written waiver of their rights, if any, to request a new trial, but excepting from the operation thereof the mo-

tion for new trial filed by her and reserving the further right of all parties to take an appeal from the judgment. The amended motion for new trial by intervener Mayer sought a modification, or, in the alternative, a new trial, of the findings and judgment only in respect to the apportionment which had been made between counsel, and not as to the total amount which had been allocated as attorneys' fees for counsel in the case. The amended motion for new trial was supported by an affidavit of two of the Moidels, which was directed to showing that the apportionment made to them of the over-all fee was inadequate and unjust. The trial judge (Shinn, J.) being no longer a judge of the superior court, the presiding judge of the court ordered that the amended motion should be heard by Superior Judge McIntosh (assigned). Accordingly the motion was heard by him and taken under submission on December 31, 1941. Upon that hearing counsel for plaintiff Mann and the interveners Gans and the O'Neill group submitted an affidavit of the trial judge, made by him after he had assumed his duties as justice of the district court of appeal. In this affidavit he stated that from the very outset of the trial he had in mind that if the action should prove successful he would be asked to allow fees, and for that reason he had made it a point to observe closely the contributions of counsel in the case as it progressed. We quote from the affidavit as follows: "In coming to my determination in the matter of counsel fees, and the amount thereof to be awarded to each of the various counsel, I had in mind the entire record, the arguments of various counsel to the court on the evidence and law, the benefits to Hearst Consolidated Publications, Inc., produced by each of the several counsel for the plaintiff and the interveners, the ability of the various counsel for plaintiff and interveners as exemplified by their activity and accomplishment in said case, the efforts made by various counsel in connection with the presentation of the case and the degree of success with which such efforts met, and the contributions of skill and effort of various counsel and the time expended by each of them in the preparation and presentation of the case. My conclusions as to the just total fee award and the amount of fee to be awarded to counsel for each of the plaintiff and the various interveners was reached after and based upon my thought given to the subjects as aforesaid, and the allocations were made so as to fully compensate each and all of the various counsel for such effort as was made by them and such benefit as was secured by

them for Hearst Consolidated Publications, Inc., as a result of the prosecution of the litigation. I fully considered also the time expended by counsel, the necessity therefor, and the contribution which the expenditure of time and effort made to the general result.''

On January 6, 1942, Judge McIntosh entered an order granting a new trial on all the grounds stated in the motion, unless on or before January 12, 1942, counsel for plaintiff Mann and counsel for the interveners Gans and the O'Neill group should each file a stipulation reducing their respective individual judgments for attorneys' fees by 5 per cent and consenting that respondent Mayer might have judgment for the resultant 10 per cent (the same being in addition to the 2 per cent which had been awarded to her as attorneys' fees by the trial judge). No stipulation having been filed, respondent Mayer served and filed a motion to have the attorneys' fee issue set for trial. This motion in turn coming on for hearing before the presiding judge on February 3, 1942, plaintiff Mann and interveners Gans and the O'Neill group appeared to oppose it on the ground that the order for new trial theretofore made by Judge McIntosh was in excess of his authority and jurisdiction. The motion nevertheless was granted and the cause set down for trial. Subsequently, as heretofore stated, we issued the writ of review upon which the matter is now before us.

In the presentation of the case to us counsel for respondent Mayer devote the major portion of their argument, not to the question whether the court below had jurisdiction to grant a new trial, but to a defense on the merits in support of its action. In that connection they contend with great earnestness that the error of the trial judge, who heard the case from its inception to its conclusion, lay in the fact that he allotted their fee without proper regard to the legal research made and the time devoted by them to the case. Moreover, they point out that some one of the three members of the firm of Moidel, Moidel & Moidel was in almost constant attendance at the trial and in the taking of depositions used therein. Hence on that basis they contend that the fee allotted to them in representing respondent Mrs. Mayer was wholly disproportionate to that awarded counsel for the plaintiff and interveners Gans and the O'Neill group. Such a complete misconception of the supposed rights of interveners and their counsel with respect to attorneys' fees—seemingly too gen-

erally held—deserves discussion here, even though it is not an issue before us for determination.

█ Our statutes authorize a representative suit such as this derivative suit (Code Civ. Proc., sec 382), and permit one of the class in behalf of which the suit has been brought by a plaintiff to intervene therein (Code Civ. Proc., sec. 387). However, it is elemental that an intervener who comes into the case to join a plaintiff does so in subordination to and in recognition of the propriety of plaintiff's case. Necessarily this is so, because it is the plaintiff who has made himself liable to his counsel for legal services and has had to carry the brunt of all the expenses involved in preparing the case for filing and for trial. These obligations and expenses incurred are not underwritten by an intervener merely because he comes into the case, and none of the costs antedating his intervention may be taxed to him. Intervener's personal liability extends only to taxable statutory costs accruing after his intervention. Aside from contract, no expense incurred by plaintiff or his counsel, such as for accountant's fees, the taking of depositions, reporter's or other expenses in connection with the trial, may be recovered from an intervener by the plaintiff except by contract, express or implied. In the instant case, aside from any liability incurred by respondent Mayer in respect to attorneys' fees to her personal counsel, she did not incur or pay any items of expense save and except the sum of $44.50 for overtime stenographic service to her personal counsel and the sum of $177.53 expended by him in travel to, and hotel bills, at San Francisco, which total of $222.03 was allowed by the trial judge. █ In a case of this character, as in any case, the plaintiff must be permitted through his counsel to dominate and control the suit to its conclusion, unfettered by the views of the interveners, save and except where it is shown to the court that the action is not being prosecuted to the best interests of the stockholders in whose behalf, as well as that of the plaintiff, the suit was instituted. In short, the interveners are deemed to accede not only to the plaintiff's theory of recovery, but that plaintiff's counsel shall represent them along with the plaintiff. Questions pertaining to the depositions which should be taken, witnesses that should be examined, motions which should be made and the line the examination should take are but a few of the problems which face any counsel in the course of litigation for his client. Of necessity some counsel in the case must determine these and other problems, and where there are

several counsel some one must be the absolute master of the litigation. Hence counsel for an intervener may not participate in the presentation of the main case save as counsel for plaintiff may consent or the court otherwise order. (*Hallett* v. *Moore,* 282 Mass. 380 [185 N. E. 474, 91 A. L. R. 572].) Counsel for interveners are but volunteers in the main original cause. ■ Even if counsel for plaintiff is agreeable to their active participation in the case, they nevertheless do not by such participation become entitled to any fee out of any recovery that ensues as a result of the action, unless it be affirmatively shown that their contribution is separate, distinct and of a character which was not, could not or would not have been made by counsel for the original plaintiff.

■ A representative suit such as a stockholder's derivative suit, involving as it often does the possibility of large financial returns, is not an open sesame for fees to counsel for interveners. Whether or not they should be allowed fees depends wholly upon and is to be measured by the extent that their assistance results in the recovery achieved. Even though they participate consistently and constantly from the date of intervention to the date of decree, there is no obligation on the part of the court in allotting attorneys' fees from the fund to recognize their contribution to its recovery, save in the circumstances mentioned. Accordingly, interveners and their counsel run this risk when they voluntarily board the battleship of the plaintiff, with free passage, to do battle to the common enemy. They stand not in the front rank but as supernumeraries. They are but guests in the action despite their interest, and so must accommodate themselves to the situation in which they find themselves. It is only where counsel for plaintiff fails that counsel for an intervener may captain the ship; and it is only where a distinct contribution towards the recovery of a fund is made that interveners are equitably entitled to have their expenses made a charge upon it.

The judge who heard the case below on its merits, and set the fees, necessarily was in an exceptional position to value the contribution of counsel and their abilities. By his affidavit he crisply indicates that counsel for plaintiff and another intervener together could have tried the case to a successful conclusion without the assistance of counsel for the complaining intervener, Mayer. Under those circumstances he would not have abused his discretion had he allowed

nothing whatever to the intervener Mayer. But we have no occasion to pass on these questions, for, as has been indicated, the ruling to be here made is controlled by entirely different considerations.

The motion for a new trial as made below raised no question as to the total of the attorneys' fees allowed, or that the allowances should have been made in favor of the various parties rather than directly to their respective counsel, or the propriety of entering personal judgments for fees against the corporation benefited by the recovery, or as to any impropriety in making the personal judgments payable without regard to whether the basic judgment was paid in whole, in part or at all. Instead, as has been indicated, the sole ground relied upon for an order granting a new trial was that the total of attorneys' fees allowed had not been properly apportioned between the respective consel. In short, that the fees in the circumstances of the case should be reallocated so that counsel for Mayer would receive more and counsel for the other parties less of the total allowed to all.

While it is a doctrine long established in equity that the reasonable costs and expenses incurred by a party in recovering or preserving a fund are chargeable upon the fund (*Trustees* v. *Greenough*, 105 U. S. 527 [26 L. Ed. 1157]), and although attorneys' fees may be allowed out of the fund recovered and made payable ratably directly to counsel rather than to their clients (*Nolte* v. *Hudson Nav. Co.*, 47 F. (2d) 166), yet we know of no precedent for the form which the judgment was permitted to take in this case. Even so, and conceding as we do that our decision must be kept within the bounds of the controversy submitted to us, we nevertheless feel impelled to make it plain, lest our failure to disapprove be misinterpreted, that we do not approve the nature, character or form of the judgments for attorneys' fees as entered in this case. While we see no objection, as such, to judgments of this character, whether made directly to counsel or to the parties, where they are properly limited so as not to impose a greater liability upon the recipient of the basic judgment than would be imposed by charging attorneys' fees ratably as a lien on any fund recovered, we do say they must at least be so limited. But where, as here, the allowances necessarily contemplated, in view of their size, full payment thereof only in case the basic judgment was fully paid, the attorney-fee judgments should have contained restrictions with respect to the issuance of execution and for satisfaction which would have

safeguarded the corporation to a liability measured by, and payable only after, such payments were made on the basic judgment. The mere fact that the parties may have contemplated that prompt payment could and would be made of the basic judgment—and it appears that at least two-thirds of it has now been paid—does not militate against the view here expressed that the form in which the judgments were cast is improper. To give approval to judgments of the type here involved would be to open the door not only to grave abuse but to possible serious financial detriment to corporations in behalf of which derivative stockholders' suits are instituted.

That the plaintiff and the various interveners, equally with Consolidated, had a legal standing to object to a personal judgment for attorneys' fees against Consolidated, rather than a judgment payable out of the funds received on the basic judgment, cannot be gainsaid. Moreover, no valid personal judgments, of the character mentioned, could have been entered except by consent of Consolidated. If, in the opinion of Consolidated, it was to its interest or benefit to have personal judgments entered against it, but in no event payable until it had received its own proportionate recovery on the basic judgment along with the proportion representing counsel fees, there would, as we have said, seem to be no legal objection thereto. But even if a legal objection against such a judgment could be spelled out by the stockholders of Consolidated, it does not follow that they could act in that respect in behalf of Consolidated, which was represented by its own counsel, except by gaining permission to appear for it to raise the point. Likewise, while it is clear that not only Consolidated but its stockholders as a group were equally interested in the total amount of attorneys' fees allowed, whether payable out of the fund or by personal judgments therefor against Consolidated, properly limited as to their payment, it is obvious that neither could have an interest as to the manner in which the fees allowed were allocated. True it is that the individual stockholders who were parties to the action, aside from being parties thereto as a class along with their respective counsel, had such an interest; but even so, their interest in that respect was sharply individual and not in behalf of any other stockholders or of the corporation. The right, then, of an individual stockholder, in the capacity of a plaintiff or as an intervener, was limited to challenging either the total allowed for attorneys' fees or the form of

the judgment, i. e., whether they were made payable out of the fund or as personal judgments against the corporation benefited.

Whatever rights intervener Mayer may have had in that regard or to have asked for a new trial in behalf of Consolidated, she definitely eliminated when she joined Consolidated in its stipulation waiving its rights to a new trial. By the waiver Consolidated eliminated any right it may have had to move for a new trial as to the amount or allocation of attorneys' fees or its personal liability therefor, and intervener Mayer in joining in the waiver necessarily eliminated any right she may have had to speak for Consolidated. Whether other stockholders could have done so we need express no opinion. Accordingly, as neither Consolidated nor its stockholders could ask for a different apportionment of attorneys' fees as set forth in the several personal judgments against it, so too intervener Mayer was likewise barred, except so far as she personally had such a right. Had the several judgments been against the fund, or had the amended motion for new trial sought additional attorneys' fees for counsel for Mayer, a different factual situation would have arisen. But whether a different principle would then be applicable we need not determine. As the motion sought relief only against other counsel, who held separate judgments not against the fund recovered but against Consolidated personally, the trial court was without jurisdiction to entertain or grant the motion, which was distinctly personal to Mayer and could not be made by her in behalf of other stockholders even though she purported to make it so. (Cf. *Glidden* v. *Cowen,* 123 Fed. 48 [59 C. C. A. 172].)

For an altogether different reason, resting wholly on our statutes, the trial court was without jurisdiction to grant the new trial. Apart from a statute so providing, a litigant has no inherent right to file a motion for new trial in an equity case or to have an adjudication thereon. Moreover, even in actions at law, as well as in equity, the Legislature may restrict, enlarge or abolish new trials. Where the Legislature has provided, as it has in this state, the specific instances in which a new trial may be granted, the trial court is without power to grant it in other instances no matter how appealing the claim therefor may be. Our statute defines a new trial as "a re-examination of an issue of fact in the same court after a trial and decision by a jury, court or referee" (Code Civ. Proc., § 656), and by a cognate statute provides that "an

issue of fact arises upon a material allegation in the complaint controverted by the answer; and, upon new matters in the answer, except an issue of law is joined thereon'' (Code Civ. Proc., § 590). The *issue of fact* in this case upon which intervener Mayer sought and obtained a new trial did not arise upon a material allegation in the complaint or upon new matter in any answer filed thereto, but by reason of motions filed in the case which it was sought to support by the record as made and, in certain instances, by supporting affidavits. That there may be no new trial upon an issue of fact brought forward by a motion in the case is settled law in this state and by the great weight of authority. (*Gray* v. *Cotton,* 174 Cal. 256 [162 Pac. 1019; *Alden* v. *Superior Court of Los Angeles County,* 186 Cal. 309 [199 Pac. 29]; 46 C. J. 63.)

The order granting a new trial is annulled.

Wood (W. J.), J., concurred in the judgment.

MOORE, P. J., Concurring.—I concur in the opinion except that part commencing on page 282 with the words ''The motion for a new trial'' and concluding with the 11th line of page 283. In my opinion that part of the discussion is too much of a stricture upon the freedom of the trial judge in conforming his judgments with the circumstances peculiar to each separate action. While it is the ubiquitous rule that reasonable expenses out of a fund may be allowed to one whose efforts have conserved such fund, payable ratably strictly to counsel rather than to their clients, yet no sound reason appears why the parties to such an action as this may not stipulate to the entry of a personal judgment against the corporation for whose benefit the action is prosecuted. All parties approved of the form of the judgment and for valuable consideration, to wit: that the time of payment should be extended and that the judgment should bear interest at the rate of 4½ per cent instead of 7 per cent. Of course the probability of prompt payment of the fund recovered would not justify a personal judgment. But, in view of the unanimous accord of the litigants and of the mutual advantages granted, I think the form taken by this judgment was proper under the circumstances although it cannot be regarded as a precedent in cases where there is no stipulation.

A petition for a rehearing was denied August 5, 1942, and respondents' petition for a hearing by the Supreme Court was denied September 2, 1942.