Filed 9/28/16  Bennett v. Foss CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| PETER BENNETT,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>CYNTHIA FOSS,<br><br>        Defendant and Appellant. | A145656 & A147009<br><br>(San Francisco County<br>Super. Ct. No. FPT09376032) |

In these consolidated appeals, Cynthia Foss appeals from the trial court's family law orders lowering respondent Peter Bennett's monthly child support payments from $4,500 per month to $835 per month (appeal No. A147009), and denying four requests for attorney fees and costs (appeal No. A145656).  Foss asserts the court erred in failing to order Bennett to pay guideline child support at the level it would have been set in April 2010, when the parties stipulated to the $4,500 monthly amount.  She also asserts the court abused its discretion in declining to award her attorney fees.  We conclude the court did not err in modifying Bennett's support obligation.  We also conclude that we lack jurisdiction as to Foss's appeal from the denial of attorney fees because her notice of appeal was untimely filed.[1]  Accordingly, we affirm.

---

[1] We have consolidated the two appeals on our own motion.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

**I.** **_Background to Appeal No. A147009_**

"Bennett and Foss are the parents of two daughters, one born in September 2000 and the other born in July 2002. The parties were never married, but lived together for over 10 years. Bennett is [or was] a marketing director for a debt buying and collection agency business. He owns [or owned] the various business entities involved in this venture through a holding company called Bennett Capital Management LLC (BCM). Foss did not work outside of the home while the parties were together.

"In 2009, Bennett filed a parentage action.

"On October 9, 2009, the parties stipulated to have the matter heard by a private judge, Eileen Preville, appointed as a judge pro tem." (_Bennett v. Foss_ (Apr. 29, 2014, A137452, A138342, A138448) [nonpub. opn.], at pp. *2–*3 (_Bennett I_).)

"On April 21, 2010, after the parties engaged in settlement negotiations before Judge Preville, Bennett signed an 'Enforceable Settlement Memorandum' (ESM). . . . Under the ESM, Bennett agreed to pay child support of $8,500 per month through August 31, 2010, at which time child support would reduce automatically to $4,500 per month. He also agreed to pay 'add-on child support' for (1) private school tuition; (2) medical insurance coverage and health care expenses; and (3) agreed-upon discretionary expenses, such as summer camp and extracurricular classes." (_Bennett I, supra,_ at pp. *2–*3, fn. omitted.)

"On October 14, 2010, Bennett served an order to show cause regarding child custody, child visitation, child support, and attorney fees. . . . In an accompanying declaration, Bennett . . . asserted his business interests had suffered losses, reducing his income. He claimed his annual salary was set to fall to $35,000 per year. He noted he had previously paid Foss $8,500 per month in child support, but claimed he was only able to pay $3,650 for the current month." (_Bennett I, supra,_ at p. *3.)

2

"On July 27, 2011, Judge Preville filed a judgment. The judgment recites that Bennett was to have paid Foss a total of $50,000 by April 30, 2011, to resolve any claims for child support add-ons and attorney fees and costs incurred through February 1, 2010. Consistent with the terms of the ESM, child support was set beginning March 1, 2010, in the amount of $8,500 per month, to be reduced to $4,500 beginning September 1, 2010. Bennett was also ordered to pay private tuition, medical expenses, up to $9,000 per year for elective activity add-ons, and up to $5,000 per year toward travel expenses associated with Foss's vacation travel with the children. A nonguideline child support findings attachment indicates that the parties disputed what guideline support would be, and also disputed whether the amount ordered was above or below guideline support." (*Bennett I, supra,* at p. *4.)

"On August 22, 2011, Bennett filed a motion [in the superior court] to vacate and/or set aside Judge Preville's July 27, 2011 judgment.

"On October 28, 2011, the trial court conducted a hearing on Bennett's motion. The court denied the motion to set aside the judgment. The court agreed that Bennett could maintain his October 2010 motion for modification of child support, notwithstanding Foss's attorney's protest that Bennett had not provided requested discovery concerning his finances." (*Bennett I, supra,* at p. *5.)

On September 21, 2012, following a protracted and contentious proceeding, the trial court granted Bennett's motion to modify child support, reducing his support obligation from $4,500 to $3,200 per month. (*Bennett I, supra,* at p. *19.) Foss appealed this ruling, as well as several others.

In our opinion filed on April 29, 2014, we reversed the child support ruling. (*Bennett I, supra,* at p. *29.) In our analysis, we concluded that because no findings had been made as to whether the stipulated support order was either above or below guideline level, Bennett had the burden to establish a change in circumstances. We observed he had failed to establish that a change in circumstances occurred between the time he

3

entered into the ESM (April 2010) and the time he filed his motion to modify support (October 2010). We found the trial court erred because it had instead based its finding of changed circumstances on evidence pertaining to the period between October 2010 to January 2011. (*Bennett I, supra,* at pp. *16–*17.) We also found error in the court's refusal to allow Foss to obtain certain documents that she had requested during the discovery phase. (*Id*. at p. *17.) The matter was remanded. (*Id.* at p. *29.)

## II. *Bennett and Foss File New Motions to Modify Support*

On August 12, 2014, Bennett's attorney submitted a letter to the trial court seeking to withdraw his October 2010 motion for modification of support.

On September 11, 2014, the trial court filed an order confirming the withdrawal of Bennett's October 2010 motion. The withdrawal was made without prejudice to any pending motions filed by Foss for attorney fees and sanctions.

On October 31, 2014, Bennett filed a request to modify certain add-on child support items.

On December 3, 2014, Foss filed a request for an order modifying child support and for attorney fees and costs. Specifically, she sought to modify support as follows: "Change child support of $4,500 per month to reflect the fact that Respondent now has 95% custody, as opposed to her prior 50% custody, since [Bennett] has moved to London. The new monthly child support should be $5,983.00 . . . ."

On December 19, 2014, Foss filed an amended request for modification of child custody and child support. In the memorandum of points and authorities accompanying this request, she argued that the trial court was required to establish guideline support for April 2010: "Respondent is requesting a modification of child support. Her request is that the Court determine Guideline for April 2010. This determination will reveal whether the current stipulated child support is below Guideline. If, as expected, that determination indicates that the current stipulated child support is below Guideline for April 2010, Respondent is requesting that it be adjusted to Guideline."

4

On December 29, 2014, Bennett filed a response claiming that his financial circumstances had changed drastically since 2010. He attached his own support calculation, with a proposed guideline of $969 per month.

In a December 23, 2014 declaration submitted in opposition, Bennett declared that he was "currently earning no income."

On January 5, 2015, Foss filed a reply brief in support of her motion for modification of child support, again requesting $5,983 per month. She also asked that Bennett be ordered to pay one of their daughter's private school tuition.

On January 12, 2015, the trial court continued the hearing on the parties' respective motions to modify child support payments. The court advised the parties that "because these are new motions, if any discovery is necessary, then the parties need to get moving and get started on their discovery. There are no limitations at this point on discovery of what is necessary for guideline, determination of guideline child support. Should there be discovery problems, the Court expects to see motions, whether there are quashing or motions to limit or anything else, to be set and heard in this department."

On February 19, 2015, the trial court filed a child custody and visitation stipulation and order. The order grants Foss approximately 75 percent custody.

On March 17, 2015, Foss filed yet another reply brief in support of her child support modification motion. In this reply brief, she requested Bennett's support obligation be adjusted to $11,500 per month. Her calculation was based on a total of $72,000 per year in child support, plus $65,000 per year to pay private school tuition for both children.

## III. Trial Court Proceedings

On March 24, 2015, the court conducted the first day of hearing on the parties' motions. Foss's counsel argued that if the amount of child support the parties stipulated to in April 2010 was a below-guideline amount, "we can renege, so what happens is [the child support] just reverts to guideline in April of 2010." After a brief discussion, the

parties stipulated that the 2010 support amount represented a below-guideline order at the time the ESM was executed. Foss then called Lisa Jolicoeur to testify as an expert witness with respect to determining income available for support. When she indicated Foss had retained her to determine income available in 2010, Bennett's counsel interposed a relevancy objection.

In response to the objection, the trial court noted the parties had just stipulated that the 2010 award was below guideline. Citing to Family Code section 4065, subdivision (d) (§ 4065(d)), the court instructed the parties to provide information to establish *current* guideline child support. The court also advised Foss's attorney, "[I]f I determine that, in fact, you are simply going to establish what guideline was in 2010, which has no relevancy to the Court any more in terms of a current guideline, I am going to stop you, and/or I will make a ruling on the value of that evidence." After it became apparent that the parties had not previously exchanged their most recent respective tax returns, the court continued the hearing to July 7, 2015.

On May 18, 2015, Bennett filed his own request for order modifying child support after his ex parte request to lower support was denied. He offered two proposed support calculations, one based on his current actual income, and another based on his 2013 income (showing monthly guideline support to be either $815 or $1,863, respectively). Foss did not file an opposition brief. Her attorney, however, filed an opposing declaration on June 23, 2015.

At the continued hearing on July 7, 2015, Foss's counsel stated that unless the trial court had reconsidered its decision regarding the relevancy of April 2010 guideline support, "then basically we are stalled here and stopped. There is nothing else for us to establish, and that doesn't—so I am ready to take it up on appeal and see what I can do there." Bennett's counsel then proceeded to present evidence in support of his own motion to modify.

Bennett testified that he was currently employed and earning about $40,000 per year. His wife was pregnant and the baby was due in about a month. On cross-examination, he stated that his business known as Greenhill Global was no longer operating, and a business called AIS Services had been sold for one dollar in November 2013. Another business called Applied Income Sciences was shut down in 2011.

Foss's counsel began questioning Bennett about business interests he owned in 2011. The trial judge advised counsel that she was not interested in hearing about entities that were no longer in existence, reiterating that evidence pertaining to 2010 guideline support was not relevant. Foss's counsel replied that he did not have current financial information from Bennett, at which point the court noted "both sides have had ample time for discovery in this case," as discovery had been open since December 2014. Shortly before the hearing was continued to yet another hearing date, Bennett was questioned by an attorney for the Department of Child Support Services (DCSS). Bennett testified that his current income was $3,221 per month, plus an average monthly bonus of $1,000. On the following hearing day, July 14, the DCSS attorney indicated the agency's preliminary assessment placed guideline support at $658.

On October 5, 2015, the trial court filed its order after hearing. The court granted Bennett's request to modify add-on support.[2] The court also granted both parties' requests to modify support, setting guideline support at $835 per month and ordering the parties to bear the cost of private school equally. Foss filed a timely notice of appeal.[3]

**DISCUSSION**

## I. Standards of Review

As we noted in *Bennett I,* the standard of review for an order modifying a child support order is well established: " ' "[A] determination regarding a request for

---

[2] Nothing in Foss's brief contests this aspect of the trial court's order.

[3] We separately address Foss's appeal from the denial of her attorney fee request below.

7

modification of a child support order will be affirmed unless the trial court abused its discretion, and it will be reversed only if prejudicial error is found from examining the record below." [Citations.] Thus, "[t]he ultimate determination of whether the individual facts of the case warrant modification of support is within the discretion of the trial court. [Citation.] The reviewing court will resolve any conflicts in the evidence in favor of the trial court's determination." ' " (*Bennett I*, *supra*, at p. *13.)

"However, . . .'the trial court has "a duty to exercise an informed and considered discretion with respect to the [parent's child] support obligation . . . ." [Citation.] Furthermore, "in reviewing child support orders we must also recognize that determination of a child support obligation is a highly regulated area of the law, and the only discretion a trial court possesses is the discretion provided by statute or rule. [Citations.]" [Citation.] In short, the trial court's discretion is not so broad that it "may ignore or contravene the purposes of the law regarding . . . child support." ' Put another way, a trial court's failure to follow the law in setting support constitutes an abuse of discretion." (*Bennett I*, *supra*, at p. *13.)[4]

## II. Child Support Ruling

Foss first asserts that her appeal arises out of her " 'Request for Order,' " in which she sought to "renege" on the child support that she agreed to in April 2010. She contended below that the stipulated child support, which, with its various components, totaled approximately $10,000 per month, was below a statutory guideline level of at least $20,000 per month. She asserted that pursuant to section 4065(d), she was permitted to "renege" on the stipulated child support, and that child support should then be raised to the "Guideline" amount." In reality, as the trial court noted, Foss filed a

---

[4] To the extent an appellant challenges a trial court's factual findings, we review the findings for substantial evidence, considering the evidence in the light most favorable to the party who prevailed in the trial court. (*In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1151.) Here, Foss has explicitly waived any argument as to the sufficiency of the evidence supporting the trial court's income determinations.

8

motion to *modify* child support based on the fact that Bennett had relocated to London, a circumstance had caused her timeshare to increase. She did not file a motion to "*renege*" on the stipulated child support. She simply sought a different amount of support than that which she was presently receiving.

Foss's apparent purpose in filing her modification motion was to force Bennett to pay child support from December 2014 onward on the basis of his April 2010 income. She argues that she "merely had to establish Guideline for April 2010 and then, if it was less than the stipulated child support, child support would change to the Guideline amount." She complains that "[i]nstead of allowing [her] to establish Guideline for April 2010, [the court] imposed the cumbersome and irrelevant process of requiring [her] to establish 'current' Guideline." As we understand her argument, she claims that under section 4065(d), a below-guideline stipulated child support award must be modified to whatever would have been guideline at the time the stipulation was made, regardless of the parties' present financial circumstances. This argument is untenable.

Foss's position that child support must necessarily " 'revert to the applicable guideline or higher,' " if a stipulated amount is determined to be below guideline finds no support in the statute she relies on, section 4065(d). That section provides: "If the parties to a stipulated agreement stipulate to a child support order *below* the amount established by the statewide uniform guideline, *no change of circumstances need be demonstrated* to obtain a modification of the child support order to the applicable guideline level or above." (Italics added.) Notably, the word "revert" does not appear in the statutory language. Nor does Foss cite to any case law in support of her assertion that below-guideline stipulated child support awards are subject to retroactive modification. Our own research has disclosed no such case.

In our prior opinion, we summarized the established law as follows: " 'Since there is no concomitant provision for stipulated child support orders *above* the amount established by the statewide uniform guideline, the ineluctable inference is that a "change

9

of circumstances" *must* be demonstrated to obtain a downward modification of the child support order to the applicable guideline level or below [under section 4065(d)]. In short, the statute lets either party " 'renege' on the stipulation at any time, and without 'grounds,' " if the stipulated award is *below* the guideline amount [citation], but otherwise adheres to pre-guideline law and requires proof of changed circumstances to reduce a higher award. [Citations.] Each case stands or falls on its own facts, but the overriding issue is whether a change has affected either party's financial status.' [Citation.] One may not obtain a reduction of a generous stipulated support order simply because of a change of heart. [Citation.] 'The burden of proof to establish that changed circumstances warrant a downward adjustment in child support rests with the supporting spouse.' " (*Bennett I, supra*, at pp. *15–*16.)

We did not depart from these principles in *Bennett I*. As the trial court noted in its October 5, 2015 order, we reversed the lower court because the court had "erred in failing to make a *predicate determination* of whether Bennett had shown a change in circumstances to modify child support . . . [because] as the *moving party* [he] had to first establish a change in circumstances before any modification could occur." Our analysis did not include any discussion as to how the court should proceed to calculate child support after making this required predicate determination.

In the present matter, the parties resolved the "predicate determination" by stipulating that the original judgment contained a "below-guideline order," relieving Foss, as the moving party, of the need to prove a change in circumstances in order to seek a higher support order. On the other hand, Bennett, with respect to his own motion to modify child support, *was* required to demonstrate a substantial change in circumstances because he was seeking to *lower* his support obligation. The trial court found he did make such a showing, and Foss does not challenge that factual determination in her opening brief on appeal. Instead, she mistakenly asserts that Bennett "was required to establish both Guideline for April 2010 and Guideline for May 2015 *before* a material

10

change in circumstance could be determined." (Italics added.) This assertion reflects a fundamental misunderstanding of the relevant statute, a misunderstanding that permeates her briefing.

Foss mistakenly understands section 4065(d) to require child support to automatically " 'revert to the applicable guideline or higher' " if it is below-guideline. The statute says no such thing. The most probable reason the Legislature did not specify any procedures for determining post-stipulation support in section 4065(d) is because there are already provisions in place to make such determinations. (See Fam. Code, § 4050 et seq.) Those are the provisions that the trial court followed in this case.[5]

Foss also asserts that "[r]equiring the payee parent to establish Guideline for some unknown point in the future imposes a more onerous burden, one that is not indicated in the language of section 4065(d)." But the trial court here was not considering an "unknown point in the future"; the court was considering the present point in time and the current financial circumstances of both parties.

### III. The Disentitlement Doctrine Does Not Apply

Alternatively, Foss claims a June 23, 2015 order of contempt—issued in a separate civil case in response to Bennett's failure to appear at a continuation of a prior debtor exam and his failure to provide certain financial documents—required the trial court to stay his motion to modify child support. She relies on the "disentitlement doctrine" as set forth in *Stoltenberg v. Ampton Investments, Inc*. (2013) 215 Cal.App.4th 1225

---

[5] Foss also insists that this appeal is a case of " 'déjà vu all over again' " because the trial court here, as in *Bennett I,* did not establish the guideline support amount for April 2010. However, the reason we faulted the trial court in *Bennett I* was because the court should have made findings as to what Bennett's financial circumstances were in April 2010 in order to determine whether these circumstances had changed in October 2010, the month in which he filed his motion to modify. A similar scenario is not at play here.

11

(*Stoltenberg*), as well as Code of Civil Procedure section 2023.030, subdivision (d)(2). Her reliance is misplaced.

"An *appellate court* has the inherent power, under the 'disentitlement doctrine,' to dismiss an appeal by a party that refuses to comply with a lower court order.' " (*Stoltenberg, supra,* 215 Cal.App.4th at p. 1229, italics added.) Courts have applied the disentitlement doctrine to dismiss an appeal "in a variety of circumstances, including: where a parent had taken and kept children out of the state in violation of a divorce decree [citations]; where a husband had failed to pay alimony as ordered in an interlocutory judgment of divorce [citation]; . . . where defendants willfully failed to comply with trial court orders regarding a receivership," as well as "where a party failed or refused to appear for a judgment debtor examination." (*Ironridge Global IV, Ltd. v. ScripsAmerica, Inc.* (2015) 238 Cal.App.4th 259, 265–266 (*Ironridge*).)

In *Ironridge,* for example, the parties entered a settlement under which the defendant agreed to transfer shares of its stock to the plaintiff in satisfaction of a debt. The defendant failed to do so, and then repeatedly violated the trial court's order compelling it to transfer the stock to the plaintiff and prohibiting it from transferring shares to third parties. (*Ironridge*, *supra*, 238 Cal.App.4th at p. 261.) The Court of Appeal granted the plaintiff's motion to dismiss the appeal, based on "[the] defendant's flagrant disregard for the order" of the trial court. (*Id.* at p. 262.)

Similarly, in *Alioto Fish Co. v. Alioto* (1994) 27 Cal.App.4th 1669, 1676, the defendants repeatedly refused to comply with trial court orders to deposit funds into a receiver's bank account and to provide certain financial information. The Court of Appeal noted that formal contempt proceedings were not required to sustain a dismissal, finding that the trial court's "successive orders to compel and imposing sanctions contain judicial findings that the appellants have persisted in willfully disobeying the trial court's orders." (*Id*. at p. 1683.)

12

As the above summary suggests, the disentitlement doctrine does not apply to trial court proceedings. Foss herself concedes there are no cases that have applied the doctrine in a trial court setting. We conclude the trial court did not err in refusing to grant Foss's request for a stay of Bennett's motion for modification of child support.

While Foss also relies on the authorization of Code of Civil Procedure section 2023.030, subdivision (d) for terminating sanctions for failure to comply with discovery, the record she provides to this court does not show that she ever requested the trial court to impose terminating sanctions.[6] We therefore deem the argument to be forfeited. (See *People v. Muehe* (1931) 114 Cal.App. 739, 741 ["An appellate court will not decide matters which are not within the issues as presented below."].)[7] As none of Foss's arguments have merit, the order modifying child support is affirmed.

## IV.  *Attorney Fees*

Appeal No. A145656 arises out of the trial court's denial of Foss's requests for attorney fees. We normally review the attorney fee rulings for abuse of discretion. (*In re Marriage of Drake*, *supra*, 53 Cal.App.4th 1139, 1166.) However, we dismiss this appeal on our own motion because we lack jurisdiction as Foss's notice of appeal was untimely filed.

### A. *Background*

In *Bennett I,* we elected not to address Foss's appeal from the trial court's order denying her four separate requests for attorney fees and costs because she relied on an

---

[6] Indeed, the trial court notes in its order after hearing that after it granted the continuance on March 24, 2015, neither party filed *any* discovery motions, either to compel or quash discovery.

[7] In her reply brief, Foss also challenges the trial court's decision to allow Bennett to appear by telephone. She did not raise this argument in her opening brief and we deem it to be forfeited. Generally, the raising of a new ground for the first time in a reply brief is not proper appellate practice. (*Taylor v. Roseville Toyota, Inc.* (2006) 138 Cal.App.4th 994, 1001, fn. 2.)

inapplicable statute in her appellate briefing.  (*Bennett*, *supra*, at p. *21.)  We also explicitly declined to express an opinion as to whether attorney fees might be recoverable under any other provision of law.  (*Ibid*.)

After the matter was remanded, Foss filed a request for various attorney fees and/or sanctions on October 8, 2014.

On December 11, 2014, the trial court filed its order denying all of Foss's requests for attorney fees and/or sanctions.  No appeal was taken from this ruling.

On January 13, 2015, Foss filed another request for order regarding attorney fees.  Foss appeared to construe the December 11, 2014 order denying her motion as an invitation for her to refile it.

On February 18, 2015, a hearing was held and the matter was submitted on the pleadings.

On April 6, 2015, the trial court filed its order denying Foss's request for attorney fees.  The court indicated the January 13, 2015 request was both untimely and unwarranted, noting that all pending attorney fee and/or sanctions motions had been addressed in its December 11, 2014 ruling, from which no appeal had been taken.

On May 1, 2015, Foss filed a motion for new trial on the April 6, 2015 ruling.

On June 10, 2015, the trial court filed its order denying the motion for new trial.

On July 9, 2015, Foss filed a notice of appeal from the April 6, 2015 ruling, noting the date on which her motion for new trial had been denied.

### *B.  Discussion*

Rule 8.104(a) of the California Rules of Court specifies that a notice of appeal must be filed on or before the earliest of (1) 60 days after the superior court clerk serves a "Notice of Entry" of judgment or a file-endorsed copy of the judgment, showing the date either was served; (2) 60 days after a party serves a "Notice of Entry" of judgment or a file-endorsed copy of the judgment with a proof of service; or (3) 180 days after entry of

14

judgment.[8]  The clerk's certificate of service by mail shows that on April 6, 2015, the clerk mailed to Foss's counsel a copy of the order issued that same day denying the requests for attorney fees.

A valid motion for a new trial will extend the time for taking an appeal:  "If the motion for a new trial is denied, the time to appeal from the judgment is extended for all parties until the earliest of:  [¶] (A) 30 days after the superior court clerk, or a party serves an order denying the motion or a notice of entry of that order; [¶] (B) 30 days after denial of the motion by operation of law; or [¶] (C) 180 days after entry of judgment." (Cal. Rules of Court, rule 8.108(b)(1).)  If the motion is *not* a valid motion for a new trial (e.g., it is not timely, is made in a proceeding in which the motion does not lie, or is not made on cognizable grounds), the applicable time period will not be extended.  (*In re Marriage of Patscheck* (1986) 180 Cal.App.3d 800, 802; *Lamb v. Holy Cross Hospital* (1978) 83 Cal.App.3d 1007, 1010; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2014) ¶ 3:70, p. 3-36.)  We conclude here that Foss's new trial motion was not authorized, and therefore not valid, because the order issued April 6, 2015 did not emanate from a trial.

It has been generally stated that "[a] motion for new trial may be used to challenge an appealable order on a motion as well as a decision or verdict in a conventional civil action (*In re Marriage of Beilock* (1978) 81 Cal.App.3d 713, 719–721 [(*Beilock*)] and a motion for new trial may be based on a number of different grounds, including errors of law.  (Code Civ. Proc., § 657, subd. 7.)" (*Blue Mountain Development Co. v. Carville* (1982) 132 Cal.App.3d 1005, 1014.)  As grounds for her new trial motion, Foss relied on insufficiency of the evidence to justify the decision (Code Civ. Proc., § 657, par. 6), and error in law (Code Civ. Proc., § 657, par. 7.)

---

[8] Under California Rules of Court, rule 8.104(e), the word "judgment" includes an appealable order.

After this case was fully briefed, we sent out a request for additional briefing on "whether a motion for new trial lies to secure review in the trial court of the decision on a postjudgment motion for attorney fees." We asked the parties to include a discussion of *Mann v. Superior Court* (1942) 53 Cal.App.2d 272, 285 (*Mann*). Before we discuss *Mann,* we note Foss first contends that our characterization of her attorney fee motion as a "post-judgment" motion "would appear to be inappropriately narrow" and "somewhat misleading" since the fees being sought "had nothing to do with the underlying [July 27, 2011] judgment."[9] Yet all of her attorney fee motions were filed *after* the July 2011 judgment, in response to Bennett's 2011 modification motion.

Additionally, in family law proceedings, an order that is a final appealable order is a judgment for purposes of appealability. Her prior appeal, wherein we reversed the lower court's modification order, was based on such a final order, and the order that she appeals from here was issued subsequent to that final appealable order. The attorney fees she sought on remand were the same fees that arose out of the prior proceeding. We also note she was alerted below to the questionable status of her new trial motion when the trial judge expressed skepticism as to whether that court had jurisdiction to consider a motion for new trial in the instant circumstances. Accordingly, there is nothing "inappropriate" or "misleading" in our construction of the order appealed from here as indeed constituting a postjudgment motion for attorney fees.

Foss next argues that *Mann* was substantively overruled by the Supreme Court in *Carney v. Simmonds* (1957) 49 Cal.2d 84 (*Carney*). In *Mann,* the appellate court considered "whether the motion for new trial lies to an order allowing attorney fees,

---

[9] We note in her opening brief, Foss explicitly acknowledged as a "fact" that the April 6, 2011 order was a "post-judgment ruling." She also admitted that her motion for new trial "requested that Commissioner Wightman *reconsider* her April 6, 2015 FOAH" (italics added), reinforcing the impression that her motion for new trial was really a disguised motion for reconsideration under Code of Civil Procedure section 1008.

16

granted as an incident to a recovery in a stockholder's derivative suit and not upon an issue joined by the pleadings." (*Mann*, *supra*, 53 Cal.App.2d at p. 275.)

In *Mann*, the plaintiff had instituted a stockholder's derivative suit in equity. Over time, various represented parties intervened in the lawsuit. The trial itself was conducted by counsel for Mann. (*Mann*, *supra*, 53 Cal.App.2d at pp. 275–276.) Following the trial, Mann and several other plaintiffs filed motions for attorney fees. (*Id*. at p. 276.) After a decision on the attorney fees was rendered, one of the intervenors filed a motion for new trial, asserting that the total fees allowed had not been properly apportioned between the respective counsel. (*Id.* at pp. 277–278.) The appellate court concluded that a motion for new trial was not appropriate because the fact at issue arose out of a motion, and not upon a material allegation in the complaint. (*Id*. p. 285.) The court relied, in part, on the proposition that "there may be no new trial upon an issue of fact brought forward by a motion in the case." (*Ibid*.) As Foss correctly notes, since the time *Mann* was decided case law has established a broad definition of the term "trial" and held that motions for new trial can be used to address some matters brought forward by motions.

In *Carney,* the Supreme Court noted that appellate courts had found new trial motions to be inappropriate following rulings on motions for: (1) judgments of dismissal, (2) judgments on the pleadings, (3) judgments on an agreed statement of ultimate facts and (4) default judgments. (*Carney*, *supra*, 49 Cal.2d at pp. 88–89.) The court then further stated, "[T]here is no less reason why the trial court should have a second chance to reexamine its judgment where issues of fact are involved than where issues of law or law and fact are decided." (*Id*. at p. 90.) The court concluded that a motion for new trial was appropriate in the four situations mentioned above, as well as after judgments of nonsuit and judgments on directed verdicts. (*Id*. at pp. 90–91.) However, the case did not specifically address postjudgment attorney fee motions.

Notwithstanding *Carney,* no recent case expressly holds that a motion for new trial can be utilized to secure review in the trial court of the decision on a postjudgment

motion for attorney fees. For example, the view that petitions for writ of execution at issue in cases such as *Beilock, supra,* 81 Cal.App.3d 713, are analogous to pleadings presenting an issue for "trial" does not necessarily require a determination that the hearing on a motion for *attorney fees* is so analogous.[10] On the other hand, as stated above, *Mann*'s bald statement that a new trial motion can never be used to challenge the order on a motion in the trial court is clearly too broad. However, we agree with *Mann* to the extent it concludes that a motion for new trial is not available to challenge a postjudgment attorney fees motion. *Carney* did not overrule that aspect of the *Mann* decision.

Finally, Foss contends that even if her motion for new trial was not procedurally proper, she actually had 180 days within which to file her appeal because the trial court did not issue its April 6, 2015 order on the "required" FL-190 form. We disagree.

California Rules of Court, rule 8.104(a)(1)(A) provides that the time within which to appeal is "60 days after the superior court clerk serves on the party filing the notice of appeal a document entitled "Notice of Entry" of judgment *or a file-endorsed copy of the judgment, showing the date either was served*." (Italics added.) Here, the clerk satisfied this rule on April 6, 2015 by transmitting a file-endorsed copy of the judgment accompanied by proof of service. The rules of court require Form FL-190 to be used in

---

[10] In *Beilock, supra,* 81 Cal.App.3d 713, the appellate court stated: "Wife's petition for the writ of execution can be analogized to the complaint because, therein, she states a claim for relief. Husband's motion to quash the execution may be viewed as his 'answer' to the claim for relief. A decision on the merits of the opposing claims was reached after presentation of evidence and legal argument." (*Id*. at p. 721.) Thus, in light of the broad definition of "trial" set forth in *Adams v. Superior Court* (1959) 52 Cal.2d 867, 870, " ' "trial" is the examination before a competent tribunal, according to the law of the land, of questions of fact or of law put in issue by pleadings, for the purpose of determining the rights of the parties*,'* [¶] . . . [¶] the hearing in the case here . . . was clearly a trial. Those proceedings were held under the law of the land, the court considered issues of fact and law raised by 'pleadings,' and, as to those issues, it determined certain rights of the parties." (*Beilock*, at p. 721.)

certain specific instances only, not including postjudgment attorney fee orders. Specifically, California Rules of Court, rule 5.413(a) provides that "the clerk must give notice of entry of judgment, using Notice of Entry of Judgment (form FL-190), to the attorney for each party or to the party if self-represented, of the following:  [¶] (1) A judgment of legal separation; [¶] (2) A judgment of dissolution; [¶] (3) A judgment of nullity; [¶] (4) A judgment establishing parental relationship (on form FL-190); or [¶] (5) A judgment regarding custody or support."  Because the trial court was not required to use form FL-190, the time within which to file an appeal remained 60 days from April 6, 2015.  Foss did not file her notice of appeal within this time.  Accordingly, we lack jurisdiction and the appeal must be dismissed.

## DISPOSITION

As to appeal No. A147009, the order is affirmed.  Appeal No. A145656 is dismissed for lack of appellate jurisdiction.

_____

DONDERO, J.

We concur:

_____

HUMES, P. J.

_____

BANKE, J.

A145656/A147009